**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Robien Nadhar, et al., | No. CV-21-00275-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Tracy Renaud, | |
| Defendant. | |

Pending before the Court is Defendant Tracy Renaud's[1] motion to dismiss and Plaintiffs'[2] motion for sanctions, both of which are fully briefed. (Docs. 15, 18, 19, 29.) For the following reasons, the Court denies both motions.

**I. Background**

   **A. EB-5 Program**

The EB-5 program allots visas to immigrants who have "invested . . . capital" in a new commercial enterprise ("NCE") that will "create full-time employment for not fewer than 10 United States citizens" or foreign nationals authorized to work in the United States, excluding the applicant's spouse or children. 8 U.S.C. § 1153(b)(5). At the times relevant to the petitions at issue in this case, applicants for the EB-5 program were required to invest

---

[1] Renaud was the Senior Official Performing the Duties of the Director, U.S. Citizenship and Immigration Services ("USCIS"). As of August 3, 2021, the current director of USCIS is Ur M. Jaddou.

[2] Plaintiffs are Maria Robien Nadhar, Srennadh Kartei, Vijay Keerthi Seetharam, Atul Radhakrishana, Hendrik Lund, Nazanin Naikan, Kautilya Vemulapalli, Karien Wilson, Uma Saimani, and Ali Al Sharifi.

at least $1,000,000 in a qualifying enterprise unless the project was in a "targeted employment area,"[3] in which case the investment threshold was $500,000.[4]  8 U.S.C. § 1153(b)(5)(B)(ii), (C)(ii); 8 C.F.R. § 204.6(f)(1)-(2).

Applicants can satisfy the EB-5 "job creation" requirement by showing that their investment will directly create full-time positions for at least 10 employees.  8 C.F.R. § 204.6(j)(4)(i).  Alternatively, applicants who participate in the EB-5 Immigrant Investor Program (or "Regional Center Program") can demonstrate that their investment is within an approved regional center and that the investment will "create jobs indirectly through revenues generated from increased exports resulting from the new commercial enterprise."  8 C.F.R. § 204.6(j)(4)(iii), (m)(7).  Participants in the Regional Center Program may show indirect job creation through "reasonable methodologies," including "multiplier tables, feasibility studies, analyses of foreign and domestic markets for the goods or services to be exported, and other economically or statistically valid forecasting devices which indicate the likelihood that the business will result in increased employment."  8 C.F.R. § 204.6(m)(7)(ii).  Multiple investors may aggregate their investments, and one NCE can serve as the basis for multiple EB-5 petitions so long as each investor individually meets the monetary and job creation requirements.  *See* 8 C.F.R. § 204.6(g).

Foreign nationals apply for the EB-5 Program using Form I-526, Immigrant Petition by Alien Investor.  *See* 8 C.F.R. §§ 204.6(a), (c).  Applicants must show by a preponderance of evidence that they are eligible to receive an EB-5 visa.  8 U.S.C. § 1361.  An approved visa petition is "merely a preliminary step in the visa application process.  It does not guarantee that a visa will be issued, nor does it grant [the applicant] any right to remain in the United States."  *Tongatapu Woodcraft Haw., Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir. 1984).  Once U.S. Citizenship and Immigration Services ("USCIS") has approved

---

[3] A "targeted employment area" is defined as "a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)."  8 U.S.C. § 1153(b)(5)(B)(ii).

[4] As of November 21, 2019, these thresholds have increased to $1,800,000 and $900,000, respectively. 8 C.F.R. § 204.6(f)(1)-(2) (eff. Nov. 2019).  Since each Plaintiff filed an application prior to that date, they may qualify for an EB-5 visa under the lower thresholds.  (*See* Doc. 7 ¶¶ 88, 98, 108, 118, 127, 136, 145, 154, 164, 173.)

an I-526 petition, the applicant may apply for two-year conditional lawful permanent resident ("LPR") status. 8 U.S.C. § 1186b(a). The investor can eventually qualify for full, nonconditional LPR status by submitting a petition that demonstrates the investor has "maintained his or her capital investment" for over two years and "created or can be expected to create within a reasonable time ten full-time jobs for qualifying employees." 8 C.F.R. § 216.6(a)(4)(iii)-(iv).

### B. USCIS's Processing Procedures for I-526 Petitions

The Immigration and Nationality Act ("INA") limits the total number of visas available to foreign nationals each year, as well as the number of visas available for nationals of any single country. *See* 8 U.S.C. §§ 1151, 1152. Most visa applications, including the ones at issue here, are considered in the order they are filed. 8 U.S.C. § 1153(e). USCIS formerly processed Form I-526 petitions on a "first-in, first-out" basis. *See* Press Release, U.S. Citizenship and Immigration Servs., USCIS Adjusts Process for Managing EB-5 Visa Petition Inventory (Jan. 29, 2020), https://www.uscis.gov/news/news-releases/uscis-adjusts-process-for-managing-eb-5-visa-petition-inventory [hereinafter Press Release]. However, in January 2020, USCIS announced that it would "give[ ] priority to petitions where visas are immediately available, or soon available." *Id.* Under the new approach, USCIS evaluates the visa availability for a petitioner's country of birth and uses that information, "along with other factors, to determine which Form I-526 petitions should be processed first." U.S. Citizenship and Immigration Services, *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach* (April 2, 2021), https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach. The agency stated that the "new operational approach aligns with other visa-availability agency adjudications processes, is more consistent with congressional intent for the EB-5 Immigrant Investor Program, and increases fairness in the administration of the program." Press Release.

### C. Allegations and Claims

All Plaintiffs filed Form I-526 petitions as part of the EB-5 visa program process. (*Id.* ¶¶ 88, 98, 108, 118, 127, 136, 145, 154, 164, 173.) Plaintiffs are nationals of several countries, including India, South Africa, Iran, and Iraq. (Doc. 7 ¶¶ 1-10.) Four Plaintiffs reside in the United States, and of those, one, Nadhar, lives in Arizona. (*Id.* ¶¶ 1-10.) The remaining Plaintiffs reside in five other countries. (*Id.*) Except for Al Sharifi, whose lost petition will be recreated and assigned for review after resubmission (Doc. 11 ¶ 5), and Niakan, whose petition has already been assigned for review (Doc. 7 ¶ 154), Plaintiffs, as of the date Defendant's motion to dismiss was filed, have been waiting an average of 17.5 months (*Id.* ¶¶ 88, 98, 108, 118, 127, 136, 145, 164). Upon approval of their petitions, Plaintiffs are eligible to immediately apply for lawful permanent resident status. (*Id.* ¶¶ 94, 104, 114, 123, 132, 141, 150, 160, 169, 177.)

Plaintiffs allege that the processing times for Form I-526 petitions have increased dramatically in recent years. (Doc. 7 ¶¶ 52-71.) Specifically, they state that 15,122 petitions were adjudicated in Fiscal Year ("FY") 2018 while only 4,673 were adjudicated in FY 2019. (*Id.* ¶ 53.) In the first quarter of FY 2020, USCIS only adjudicated 455 petitions. *Id.* The slowdown is also reflected in the estimated processing times published by USCIS. In April 2019, the agency reported that processing times for Form I-526 petitions were 20.5 to 27 months. (Doc. 7 ¶ 54.) In May 2019, the estimate was at 29 to 45.5 months. (*Id.*) At the beginning of July 2020, USCIS claimed that Form I-526 petitions are adjudicated within 29.5 to 61 months. (*Id.* ¶ 57.) By the end of that same month, the agency estimated the wait to be between 46 and 74.5 months. (*Id.*)

Plaintiffs allege that the slowdown in processing times is deliberate and that Defendant "has taken affirmative actions, unknown to the public, to purposefully delay adjudications of EB-5 petitions and applications." (Doc. 7 ¶ 198.) They assert that USCIS's published processing times are inconsistent with its historical average processing times, which may indicate that "the Form I-526 processing times are artificially inflated to create a potential defense against lawsuits and also end" Congressional and public inquiry

into the length of time it takes to adjudicate those petitions. (*Id.* ¶ 198.) Plaintiffs also contend that the decrease in number of petitions processed per year and the increase in published processing times "did not correspond with any decrease in resources or significant increase in demand." (*Id.*) For example, the Immigrant Investor Program Office ("IPO"), which handles all EB-5 related filings is "authorized by statute to charge fees to cover the cost of adjudicating EB-5 petitions in a reasonable amount of time." (*Id.* ¶ 38.) In 2016, the filing fee was raised from $1,500 to $3,675, and USCIS sought to raise it to $4,015 in October 2020. (*Id.* ¶¶ 38, 41.) During that same time period, USCIS received fewer applications than in previous years, but it still adjudicated fewer petitions than it did before. (*Id.* ¶ 52.) In addition, USCIS has allegedly expedited some petitions for NCEs but not others and has reassigned staff away from processing applications. (*Id.* ¶ 188.) According to Plaintiffs, these allegations evince a "common policy and practice to withhold and delay adjudication" of Form I-526 petitions. (*Id.* ¶ 20.)

Plaintiffs allege a single claim for unreasonable delay under the APA. *See* 5 U.S.C. § 706(1).

**II. Permissive Joinder**

Defendant argues that Plaintiffs are not properly joined under Federal Rule of Civil Procedure 20. That rule allows permissive joinder of plaintiffs if

> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20. "[A] district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000) (quoting *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980)).

First, Defendant argues that Plaintiffs' claims do not arise out of the same transaction or occurrence because the I-526 petitions

> (1) turn on different factual evidence specific to their circumstances, (2) are at a different stage of the adjudication process or at a different place in the inventory management process, (3) relates to (primarily) distinct EB-5 new commercial enterprises—all of which are outside of this district—and (4) are being processed on its own merits.

(Doc. 15 at 7-8.) To be sure, the merits of the petitions all raise distinct factual questions. But Plaintiffs' claims do not concern the merits of the petitions, rather their claims turn on whether an agency policy, applicable to all I-526 petitions, caused an unreasonable delay in adjudicating Plaintiffs' I-526 petitions. As such, all the claims concern a policy applicable to all plaintiffs, which amounts to the same transaction or occurrence. *Gutta v. Renaud*, No. 20-CV-06579-DMR, 2021 WL 533757, at *5 (N.D. Cal. Feb. 12, 2021) (holding that I-526 plaintiffs alleging an unreasonable delay as a result of an unlawful policy could join under Rule 20); *F.L.B. v. Lynch*, 180 F. Supp. 3d 811, 816 n.5 (W.D. Wash. 2016) (finding the same transaction or occurrence test satisfied by claims challenging the application of an unlawful policy related to the same benefit); *cf. Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (concluding that immigration plaintiffs needed to allege a pattern or policy that caused unreasonable delay to satisfy the same transaction or occurrence test).

Second, Defendant argues that Plaintiffs' claims do not raise common questions of fact or law. Defendant's argument as to common facts rehashes the same argument as above and fails for the same reason. (Doc. 15 at 8-9.) Plaintiffs have alleged a pattern or policy of delaying adjudication of I-526 forms. And, as noted below, there is a common question of law as to whether Defendant's adjudication process for Form I-526 petitions is governed by a rule of reason.

As to prejudice, Defendant makes no compelling case as to why defending in a single venue is more arduous than in multiple ones. Indeed, although Defendant complains that she will have to "litigate wholly different claims and factual circumstances with petitions at different stages of processing and review in the same action," she would have to litigate these claims even if they were severed. (Doc. 15 at 9.) The Court is not presented

with a reason for why Defendant is prejudiced by consolidating these similar claims in one venue.

**III. Failure to State a Claim**

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The task when ruling on a motion to dismiss "is to evaluate whether the claims alleged [plausibly] can be asserted as a matter of law." *See Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When analyzing the sufficiency of a complaint, the well-pled factual allegations are taken as true and construed in the light most favorable to the plaintiff. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

The Ninth Circuit considers six factors to determine whether agency action has been delayed:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
>
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (cleaned up); *see also In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138-39 (9th Cir. 2020) (adopting the *TRAC* test in the Ninth Circuit). Because this is a fact-

sensitive test, *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003), it is usually inappropriate to resolve it on a 12(b)(6) motion, *see, e.g. Gutta*, 2021 WL 533757, at *7.

As a threshold argument, Defendant argues that Plaintiffs do not allege an unreasonable delay because the alleged delay is too short. "[A] reasonable time for agency action is typically counted in weeks or months, not years." *Id.* (quoting *In re A Cmty. Voice*, 878 F.3d 779, 787 (9th Cir. 2017)). Here, Plaintiffs have tendered the application fee and waited about two years for USCIS to adjudicate their EB-5 applications, all the while watching average processing times increase. This is sufficient to state a claim.

The first *TRAC* factor carries the most weight. *In re Nat. Res. Def. Council, Inc.*, 956 F.3d at 1139. It also exposes the questions of fact that remain live in this matter, which favor denying the motion to dismiss. Defendant argues that it employs a rule of reason—processing EB-5 applications based on visa availability, rather than first-in, first out. But Plaintiffs have pled that their visas are current and that USCIS has not adjudicated their petitions, a clear deviation from the stated processing rule. Taking these allegations as true—as the Court must at the 12(b)(6) stage—Plaintiffs have stated a claim.

As is evident from the above analysis, these factual scrums will only be resolved as the evidentiary record develops. Further assessment of the *TRAC* factors would show the same. The Court will not shortchange Plaintiffs' chance to develop the evidentiary record at the 12(b)(6) stage.

**IV. Sanctions**

Plaintiffs ask the Court to sanction Defendant for failing to provide discovery needed to prosecute their motion for preliminary injunction. (Doc. 29-1.) In particular, Plaintiffs ask the Court to strike Defendant's response in opposition to their preliminary injunction motion and to grant their preliminary injunction motion as unopposed. This issue is now moot. The Court already denied Plaintiffs' motion for a preliminary injunction and, in so doing, explained why the specific sanctions Plaintiffs seek in their motion for

sanctions are inappropriate. (Doc. 33.) The motion for sanctions therefore is denied as moot.

## V. Conclusion

Plaintiffs satisfy the requirements for permissive joinder under Rule 20. They also plead sufficient facts to state a claim for unreasonable delay. Therefore,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 15) and Plaintiffs' Motion for Sanctions (Doc. 29) are **DENIED**.

Dated this 8th day of March, 2022.

Douglas L. Rayes
United States District Judge